IGNATZ BOSCOWITZ *et al.*

*v.*

THE ADAMS EXPRESS COMPANY.

1.  CARRIER —*restricting liability — of the mode.*    A common carrier can claim no exemption from liability for the loss of goods entrusted to him except such as is given by express contract.

2.  The contract must be assented to by the shipper with a view to release the duties imposed by the law, and where this is once established, the carrier in case of loss will only be responsible on account of negligence or wilful misconduct.    He can not contract against his own actual negligence.

3.  SAME—*of restrictions in the receipt given operating as a contract.*    A clause in a receipt given to a shipper of goods limiting and restricting the carrier's liability incident to its general employment, if understandingly assented to by the owner, will as effectually bind him as though he had signed it, but whether such restrictions have been assented to in a given case is always a matter of evidence.

4.  The fact that the owner of goods, by himself or clerk, filled up a receipt taken for goods shipped, is evidence tending to show that the shipper had notice of the conditions and restrictions in the printed part thereof and assented to them, but it is not conclusive.    It is still a question of fact.

5. Where the clerk of a shipper of goods took with him to an express office a blank receipt of a different company, containing a printed clause limiting the liability of the latter company, and inserted the articles and number, etc., therein, writing the name of the company with whom he was shipping over that of the other company, which was signed by the agent of the company, it was *held*, that this constituted no contract with the defendant company receiving the goods, limiting its liability, and that before such latter company could claim the benefit of the exemption contained in the receipt of the other company whose receipt was used, it must be proved by evidence outside the receipt that such was the agreement of the parties.

6. SAME—*of a contract restricting liability as to amount.* Where a common carrier gave a receipt for three separate and distinct bales of furs to be transported, containing a printed clause that the company should not be liable for any loss or damage except as forwarder only, nor for any loss or damage "of any box, package or thing" for over $50, unless the just and true value thereof was therein inserted, it was *held*, that the limitation as to the amount of the recovery was not to be applied to the three bales, but as to each one separately, notwithstanding they were all embraced in one receipt, and that the shipper might at least recover that sum for each package.

7. SAME—*evidence explaining why valuation of goods was not named in receipt.* Where the agents of an express company had solicited the business of a plaintiff who had before shipped with another company, promising to carry on the same terms that other companies had,—that such goods as the plaintiff was known to be constantly shipping should be taken on non-valuation rates,—and the plaintiff did ship a lot of furs with the defendant company without disclosing their value, which were lost by fire, it was held error for the court to refuse to allow the plaintiff to prove such offer in a suit against the defendant, as it showed a good reason for not disclosing the value of the goods, when asked to do so, and also as showing a reason for not erasing a clause in a receipt given limiting the carrier's liability when the value of the goods was not inserted therein.

8. EXPRESS COMPANY—*liability for negligence of railroad.* Although the conditions in a receipt given by an express company for goods to be shipped, limiting its liability as to amount, have been understandingly assented to by the shipper so as to become a binding contract, the express company will still be liable for the full value of the goods destroyed or lost through the negligence of the railroad company it employs to do its transportation. An express company choosing such a corporation to do its business will be liable to the same extent for the negligence of the agent employed as if the contract was primarily with such agent. It is therefore error to exclude evidence on the part of the shipper, in an action against an express company to recover for a loss occasioned by the wreck of the train carrying them, tending to show negligence on the part of the railroad company.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Mr. SIDNEY SMITH, and Mr. JOHN C. PATTERSON, for the appellants, after stating the facts of the case, made among others the following points:

1. The plaintiffs concede to the fullest extent the distinction between the effect of those notices by a carrier who seeks to discharge himself from duties the law has annexed to his employment. and those designed simply to insure good faith and fair dealing on the part of the employer; in the former, notice alone not being effectual without assent to the attempted restriction, while in the latter case notice alone, if brought home to the knowledge of the owner of the property delivered for carriage, will be sufficient. *Oppenheimer* v. *U. S. Express Co.* 69 Ill. 62; *Railroad Co.* v. *Lockwood,* 17 Wall. 357-384; 2 Greenl. Evi. § 215; Angell on Carriers, § 245; *Southern Express Co.* v. *Crook,* 44 Ala. 468.

2. The common carrier has, in truth, two distinct liabilities,—the one for losses by accident or mistake, where he is liable as insurer—the other for losses by default or negligence, where he is answerable as an ordinary bailee. *Dorr* v. *The N. J. Steam Navigation Company,* 4 Sanford, 136. And it is only in relation to the former that restrictions and limitations like those in the receipt in question are applicable; and it is the settled law, at least in the American courts, that, admitting a special contract in terms like this receipt, the carrier is still liable for loss caused by want of ordinary care, most of the cases holding that a stipulation in explicit terms exempting the carrier from loss occasioned by the negligence of himself or his servants is void as against public policy, and all holding that in the absence of such language the receipt or contract should be construed as applicable only to losses occurring without fault or negligence. *Adams Express Co.* v. *Stettaur,* 61 Ill. 421 ; *Oppenheimer* v. *U. S. Express Co.* id. 62; *Farnham* v. *Camden and Amboy Railroad Co.* 55 Penn. State,

62 ; *Jones* v. *Voorhees,* 10 Ohio, 145 ; *School District* v. *Boston and C. R. R. Co.* 102 Mass. 552 ; *Fillebrown* v. *Grand Trunk Railway Co.* 55 Me. 462 ; *Indianapolis R. R. Co.* v. *Allen,* 31 Ind. 394 ; *Hooper* v. *Wells, Fargo & Co.* 27 Cal. 11 ; *Christenson* v. *American Express Co.* 15 Minn. 270.

3. The court erred in refusing evidence which would have warranted the jury in finding that the furs were destroyed by the telescoping of the baggage car into the express car, and that if the company had adopted the Miller platform it would have prevented the telescoping, and consequent destruction of the furs by fire. It has been repeatedly held by this court, that it is the duty of railroad companies to make use of the best known appliances for the prevention of the escape of sparks from their engines, and that a failure to do so is negligence for which the company is liable. *St. Louis, Alton and T. H. R. R. Co.* v. *Gillham,* 39 Ill. 455 ; *Illinois Central R. R. Co.* v. *McClelland,* 42 id. 355 ; *Illinois Central R. R. Co.* v. *Mills,* 42 id. 407 ; *Costello* v. *Syracuse R. R. Co.* 65 Barb. 92 ; *Steinway* v. *Erie Railway,* 43 N. Y. 123.

4. The court, by an instruction, restricted the recovery under the limitation clause in the receipt to $50, while the proof shows there were three distinct bales of furs or peltries, of the aggregate value of over $8,000. The $50 clause in the receipt only limits the recovery to $50 for each separate package.

Messrs. Small & Moore, for the appellee :

An express receipt was made out by appellants and tendered to appellee for signature at the time the furs were delivered. It is insisted that appellants are conclusively presumed to have known the contents of the paper made out by themselves, and that the receipt, when signed and returned to them, became their contract as fully as if they had signed it. *Adams Express Co.* v. *Haynes,* 42 Ill. 94 ; *Illinois Central R. R. Co.* v. *Frankenberg,* 54 id. 88 ; *Oppenheimer* v. *U. S. Express Co.* 69 id. 62 ; *Western Transportation Co.* v. *Newhall,* 24 id. 467.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Plaintiffs brought their action against the Adams Express Company to recover the value of three bales of furs delivered to the company for transportation from Chicago to New York. The goods were never delivered to the consignees, but were destroyed en route by fire caused by the wreck of the train, occasioned by a broken rail.

As to the delivery of the goods to the carrier, their value and destruction by fire, there is no disagreement. The receipt taken by the shippers at the time of the delivery of the goods to the carrier, was filled up by an employee of plaintiffs, and was presented with the goods for the signature of the agent acting on behalf of the company. The blank used for that purpose was one of a large number furnished by the United States Express Company to its customers. In the receipt prepared by the bookkeeper of plaintiffs for the goods to be shipped, the word "Adams" is written over the printed words "United States," so as to make it the receipt of the Adams Express Company. A line made with a pen was drawn over the blank left for stating the valuation of the goods. The articles mentioned in the body of the receipt are "three (3) bales, said to contain peltries." On the upper left-hand corner of the receipt is stated in figures the separate and total weights of the three bales, and also "two bales mink" and "one bale skunk;" but there is a conflict in the testimony as to when these latter words and figures were placed there—whether before or after it was signed by the agent of the company.

Among the printed conditions of the receipt is the following: "And it is hereby expressly agreed that the said United States Express Company are *not to* be held liable for any loss or damage, except as forwarders only, nor for any loss or damage of any box, package or thing for over $50, unless the just and true value thereof is herein stated." The contention is, whether this clause of the receipt limits the right of

recovery, in case of the loss of the goods, to the sum of $50, because the true value was not stated therein, or whether plaintiffs, notwithstanding the restriction as to the extent of the carrier's liability, can recover the full value of the goods as shown by the evidence. Plaintiffs base their right to recover on two propositions: first, under the facts of the case it was not their duty to make known to the carrier the valuation of the goods; and second, even if it was their duty, the omission to make such disclosure can not be urged to limit a recovery for a loss of goods caused by the carrier's own negligence. On the other hand, defendant rested the defence upon the letter of the contract, relying upon what it understood to be a rule of law applicable to the case, that it was incompetent for plaintiffs to contradict or vary the terms of the contract as embodied in the receipt given by the carrier for the goods.

Upon the questions involved the court instructed, for defendant, that the issues submitted were, whether the furs were lost or destroyed by reason of actual negligence of defendant, and, if no negligence is proved, then, if the goods, while in the course of transportation, were destroyed by an unforeseen casualty, against which ordinary prudence could not provide, it was the duty of the jury to assess no greater damages than $50—the sum stated in the limitation clause of the contract,—and that the receipt in evidence must be regarded and treated as a binding contract between the parties in each and all of its provisions, and that it should be read as though the words " United States " were not in it. The court, however, refused to give for plaintiffs the reverse proposition, as it was asked to do, that the conditions and restrictions contained in the receipt were not binding upon plaintiffs, so far as they purported to limit the carrier's common law liability, unless plaintiffs had knowledge of such restrictions and assented to them. Under the charges given, the jury, no doubt, felt compelled to assess plaintiffs' damages at no greater sum than $50—which they did.

As we have seen, the goods destroyed consisted of two bales of fine, and one of coarse, furs—all distinct packages—and each proven to be of a value in excess of the sum named in the restricting clause of the receipt. It will be observed the limitation is as to "any box, package or thing;" and as each package or bale exceeded in value $50, there is and can be no reason why, in any view that may be taken of the legal effect of the alleged contract, plaintiffs can not recover that sum for each "package" destroyed. It makes no difference the several distinct packages were all embraced in one receipt,— they are, nevertheless, distinct packages. In limiting the amount of recovery, in case no negligence was proven, to $50, as was done by the court in its instructions, there was manifest error, for which the present judgment must be reversed, even if no other cause existed.

The question of the most importance in the case is, whether, as a matter of law, the receipt in evidence is to be treated as a binding contract between the parties in each and all its provisions.

Construing the receipt literally, it contains no contract between the shippers and defendant that in any manner limits the carrier's common law liability as to the amount of the recovery in case of the loss of the goods. That which is said to constitute such contract is contained in the printed part of the receipt, and is with the "United States" Express Company, and not with defendant. A case bearing a close analogy to this one in this particular, is the *Merchants' Trans. Co.* v. *Bolles,* 80 Ill. 473, where the receipt given for the goods contained exemptions in favor of other companies, and it was ruled, the carrier receiving the goods could not take the benefit of such exemptions in the receipt. It is a proposition so plain it will not be controverted, that defendant can claim no exemption from liability for the loss of the goods as a common carrier, except such as given by express contract. Neither in the written nor printed part of the receipt is there any express contract making exemptions in favor of the

34—93 Ill.

530    BOSCOWITZ *et al. v.* ADAMS EXPRESS CO. [Sept. T.

Opinion of the Court.

defendant company. Before defendant can claim the benefit of the exemptions contained in the contract with the " United States Express Company," it must appear it was the agreement of the parties, and that can only be shown by evidence. In the absence of evidence establishing that fact it was error for the court to declare, as it did, as a matter of law, that the receipt given for the goods was to be read as if the words " United States " were not in it.

The other proposition stated, viz: the receipt must be regarded as a "binding contract between the parties, in each and all its provisions," is the one most discussed. The rule of law adopted and uniformly adhered to in this State is, that a clause in a receipt given to the shipper of goods limiting and restricting the carrier's common law liability incident to its general employment, if understandingly assented to by the owner, will as effectually bind him as though he had signed it. Whether such restrictions have been assented to in any given case, is always a matter of evidence. The cases in this court that declare this doctrine are referred to in *Erie Railway Co.* v. *Wilcox*, 84 Ill. 239, and it is not necessary to repeat the citations. Where a carrier seeks exemptions from any common law liability annexed to its employment, the contract must be assented to by the shipper with a view to release the duties imposed; and when the exemption is once established, the carrier, in case of loss, will only be responsible on account of negligence or wilful misconduct. The law has wisely, and for reasons that concern public interests, inhibited a common carrier of passengers or freights from contracting against its own negligence, and, notwithstanding it may be so expressed in positive terms in the release, it is not to be read as providing against losses or injuries arising from actual negligence. No argument is made against the correctness of this proposition of law, but its applicability to the case at bar is denied, for the reason it is said the receipt containing the exemptions insisted upon was prepared by the owners of the goods, ready for the signature of the agent of defendant, and they must

be held to be conclusively bound by its provisions; and the court, as we have seen, charged that, as a matter of law, the receipt was a "binding contract between the parties in each and all its provisions."

The case of *Oppenheimer* v. *United States Express Co.* 69 Ill. 62, is cited as giving sanction to the view of the law taken by the court below. That is a misapprehension of what was decided in that case. While that case declares salutary rules designed to secure good faith between the shipper and the carrier, it does not go to the extent counsel seem to understand it. We do not wish to be understood as departing in any degree from the law declared to be applicable to the facts of that case. The principle there announced is, that, where the carrier seeks to be discharged from the duties which the law has annexed to its employment, notice alone will not be sufficient without the assent of the shipper to the attempted restrictions; but it is otherwise in respect to those duties designed simply to enjoin good faith and fair dealing—a notice alone, if brought home to the knowledge of the owner of the property delivered for carriage, will be sufficient.

It will be seen there is in that case no departure from the uniform decisions of this court, that a carrier can not be released from the duties and liabilities annexed to its employment, unless the shipper assents to the attempted restrictions. That is apparent from the fact it is said, in the beginning of the case, "the denial in the testimony that the consignors had knowledge of this condition in the receipt must be held to be overcome by the circumstances of the case." The condition to which reference is made is the limitation clause as to the amount of recovery in case of loss, where no valuation of the goods is stated. On looking into the facts of the case, the conclusion was fully warranted. There was in that case what is very justly characterized as "unfair conduct on the part of the shippers of the goods." The box containing the goods was a small one, and had nothing on it that indicated what it contained. It was called for by the driver who collects goods

for the company, and receipted for as "one case," but no information was given in any manner as to its contents or value. The receipt given was prepared by the owner of the goods, and was signed by the driver when he called for the package. The box, in fact, contained watches and jewelry of great value, and had the shippers disclosed the contents or value, increased charges would have been exacted over the sum actually paid. There is no analogy between the facts of that case and the one at bar.

The goods in this case were so put up that their nature and character were readily discoverable on the slightest examination, and were receipted for as "three bales, said to contain peltries." If the testimony given can be credited, the weights and qualities of each bale were indicated on the margin of the receipt as consisting of two bales mink and one skunk furs. It is a matter of common information that mink is among the fine furs taken in this country, and that fact must have been known to the agent of defendant when he received the goods for carriage. There was, therefore, no imposition practiced upon the carrier as to the character of the goods delivered for shipment, and it can not be said the owners omitted any duty imposed by law to insure fair dealing between the carrier and the shipper, unless it was the failure to make known the actual value of the goods. That fact, notwithstanding the provisions of the receipt, we think is open to explanation. Plaintiffs offered to prove that defendant had, through its local agents, solicited the patronage of plaintiffs, on the same terms that other companies had it—that is, that such goods as plaintiffs were known to be constantly shipping should be taken on non-valuation rates; but the court ruled it was not competent evidence. Conceding the testimony offered was true, and for the purposes of this decision it must be regarded as true, it was most important evidence tending to show why no valuation was stated. If not required to do so by express contract with defendant, or by the uniform course of business with defendant and other carriers, then

plaintiffs were not bound, in the first instance, unless inquired of concerning the actual value of the goods, to state any valuation.

The testimony excluded was important for another reason, as tending to show why neither party paid any attention to the limitation clause contained in the receipt taken for the goods. On the understanding such goods as plaintiffs were shipping were to be and had been received and carried at non-valuation rates, neither party was interested to consider the limitation clause, and that may have been the reason why plaintiffs failed to erase it, or the company to insert its own name instead of the "United States Express Company," that it might have an express agreement with plaintiffs. It is evidence, to say the least of it, that tends to show that neither party attached any importance to that clause in the receipt. Unless the limitation clause was assented to by the shippers with a view to release defendant from that liability which the law annexes to its employment, defendant can not avail of it, and that which counsel maintain as a conclusion of law is nothing more than the effect to be produced by the testimony offered to establish the fact insisted upon. As, in the former cases in this court, it was a question whether the circumstances in evidence overcame the denials in the testimony that the consignors had knowledge and therefore assented to the limitations contained in the receipt, so in this case the same question arises, and ought to be submitted to the consideration of a jury as any other fact in the case. On this branch of the case the testimony excluded was important and it was error to reject it. The same question arose in *Field* v. *Chicago and Rock Island Railroad Co.* 71 Ill. 458. In that case the bill of lading was filled out by the clerk of plaintiff, and as the court found the shippers had notice of the contents and assented to the restrictions therein contained, therefore the receipt or bill of lading was the contract between the parties. It is not understood there has been any departure from the doctrine of that case. That the fact the owner of the

goods, by himself or clerk, filled up the receipt taken, is evidence tending to show the shippers had notice of the conditions and must have assented to them, may be true, but it is not conclusive. It is still a question of fact. Sometimes such evidence may produce conviction, and justly so, as in *Field's case,* but cases may arise where the acts of the party may be susceptible of satisfactory explanation.

But admitting the conditions in the receipt were understandingly assented to by the shippers and became a binding contract between the parties, still defendant would be liable for the full value of the goods if the loss was owing to negligence on the part of the railroad company. An express company choosing such a corporation to do its business will be chargeable to the same extent for the negligence of the agent employed as if the contract was primarily with such agent, on the well recognized principle that for culpable defects in carriages used by common carriers the law makes the carrier responsible.

The fourth charge, given by the court at the instance of defendant, declares the law on this subject, but the court excluded from the jury testimony that had an important bearing on the decision. There was evidence tending to show the fire was caused by the telescoping of the cars, and although the testimony was conflicting, still there was sufficient to warrant the court in submitting that fact to the jury. Bearing directly on this important fact in the case was the testimony offered as to the efficiency of the " Miller platform " to prevent what is called telescoping of cars. Witnesses of large experience in such matters state that the " Miller platform " is regarded as adding " largely to the safety of trains," and the use of them tends to prevent breaking in the ends of the cars. One witness says he had " known the end of cars to be badly broken in collisions when they had the 'Miller platform,' but never knew one car run into another." What is known as the " Miller platform," and others equally as good, designed by other parties, was generally known and had been in use on all

the principal roads in the country long before the happening of the accident by which plaintiffs' goods were destroyed, and if such contrivances contributed materially to the safety of trains, it was the plain duty of the railroad company to have adopted some one of them, and the omission to do so, if such was the case, would be negligence. All the evidence offered as to the Miller or other equivalent platforms was excluded from the jury, and this we think was error.

It may be true, as counsel insist, that no witness testified to the kind of platform in use by the railroad company employed by defendant, or that it did not have an equivalent device or an equally safe platform. But it was proven the railroad did not have the "Miller platform" and plaintiffs offered to prove it used the "ordinary or old fashioned platform." The objection of defendant to the giving of that testimony was sustained. Had the testimony offered as to the kind of platform in fact used by the railroad company been admitted, it would, with that excluded by the court, have made the question whether the fire that destroyed plaintiffs' goods was owing to the want of the "Miller platform" or other equivalent device to prevent telescoping of the cars. It was a question of fact, and ought to have been submitted to the jury as any other fact in the case.

For the errors indicated the judgment will be reversed and the cause remanded.

*Judgment reversed.*

Mr. Justice Sheldon, dissenting:

I dissent from so much of the foregoing opinion as may seem to imply, that, in the case of such a provision as the present, there is required, in addition to knowledge, *assent* to it.

Where the provision, as here, is for the purpose of securing disclosure of value, knowledge of it brought home to the consignor is sufficient. But where it is a simple restriction of common law liability, then there must be assent in addition to knowledge.

This distinction was recognized and adopted in the *Oppenheimer* case.

The opinion, inadvertently I think, overlooks the distinction.