# Wells, Fargo & Company v. Henry W. K. Cutter et al.

## Gen. No. 13,765.

COMMON CARRIERS—*what limitations of liability not effective.* Held, that the limitations contained in a receipt for merchandise undertaken to be carried by an express company were not, under the evidence, assented to by the shipper; also, *held*, that there was no attempt on the part of the shipper to deceive the company as to the value of such merchandise.

Assumpsit, Error to the Municipal Court of Chicago; the Hon. EDWARD A. DICKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed March 20, 1908.

Statement by the Court. Material facts in this case are that on April 26, 1906, defendants in error—hereinafter referred to as plaintiffs—delivered to plaintiff in error—hereinafter referred to as defendant—five cases of merchandise to be forwarded by the defendant express company to a consignee at San Francisco, California. One of these cases was never delivered nor accounted for. The missing case of merchandise is valued at $207.50 and plaintiffs sued to recover that amount.

Our attention is called to the fact that on the eighteenth of April, 1906, eight days before the merchandise in question was delivered to defendant for shipment, an earthquake occurred at San Francisco, by reason of which and the fire following a portion of that city was destroyed. It does not appear, however, that this fact had anything to do with the loss of the merchandise in controversy or its failure to reach the consignee. It is apparently undisputed, and there is evidence tending to show, that the five cases constituting the shipment weighed over a thousand pounds and contained merchandise valued, it is said, at $728. The plaintiffs prepaid to the defendant the express charges on the whole shipment, amounting to $98. The defendant gave a receipt for the goods which contained the following: "Nor in any event shall said company be held liable beyond the sum of $50, at not exceeding which sum the said property is hereby valued, unless a different value is hereinabove stated."

It appears undisputed that the plaintiff made no representations as to the value of the goods and that nothing was said about it at the time the shipment was made by either party. Plaintiffs' shipping clerk was aware of the above quoted provision in the receipt, but no attention seems to have been paid to it by either of the parties in their ordinary business transactions. The consignment in controversy was accepted without question. The defendant conceded at the trial its liability to the plaintiffs to the extent of

$50, but contended that notwithstanding the loss of one case of the goods through its negligence, which negli-' gence it concedes must be presumed from its inability to account for it, the plaintiffs were not entitled to recover a greater sum than the $50 which it is said they had, by acceptance of the receipt containing said provision, represented to the defendant as the true value of the goods for purposes of the shipment, upon which valuation it is claimed the express charges were based. It is said that under the regular rules of the defendant express company a higher rate of charges would have been imposed had plaintiffs declared the true value of the lost case to be $207.50 as now claimed, and that in such case the plaintiffs would have been charged sixty cents more per hundred pounds than they in fact paid for carriage of the case in question. It appears from the testimony of plaintiffs' credit man that when the defendant's collector brought the receipt to plaintiffs' office, the credit man figured the charges to see if they were correct and found them lower than the tariff rate. He called the attention of defendant's collector to this, and was told that the particular rate in this case was made because the five cases constituting the shipment weighed more than a thousand pounds.

The jury returned a verdict in favor of the plaintiffs for $207.50, the value of the goods as claimed, and judgment was entered accordingly

HOLT, WHEELER & SIDLEY, for plaintiff in error.

MUSGRAVE, VROMAN & LEE, for defendants in error.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The defendant contends that the judgment of the lower court is erroneous; that a carrier may lawfully agree with a shipper that its liability in case of loss, even though resulting from its own negligence, shall

Wells, Fargo & Co. v. Cutter.

not be greater than the value placed upon the goods by the shipper upon which the carrier's charges are based; that such an agreement does not operate as a waiver or limitation of any common law duty of the carrier, and that it may be effected by a notice contained in the carrier's receipt to the shipper that it will not be liable beyond a stated amount unless a higher value is disclosed by the shipper, if such notice is brought home to the knowledge of the shipper and no fraud, deceit or coercion is exercised by the carrier in connection with the shipment. It is argued that in the case at bar the plaintiffs' shipping clerk admitted knowledge of the $50 valuation provision of the receipt and knew that there was a blank column in the receipt headed "Value asked and given as," which was there to afford opportunity for inserting the value of the shipment if the parties were so disposed. It is urged that such knowledge by the shippers was sufficient without any assent on their part, to bind plaintiffs to the terms of that provision. In support of these contentions defendant's counsel cites among others the case of Oppenheimer v. U. S. Express Co., 69 Ill. 62-66. In that case it was urged in behalf of appellants "that it is incumbent upon the express company to show, not only that the consignors had knowledge of the contents of the receipt but also that they assented to the same and consented to be bound thereby." The court says: "A distinction exists between the effect of those notices by a carrier which seek to discharge him from duties which the law has annexed to his employment, and those like the one in question, designed simply to insure good faith and fair dealing on the part of his employer; in the former case notice alone not being effectual without an assent to the attempted restriction; while in the latter case, notice alone, if brought home to the knowledge of the owner of the property delivered for carriage, will be sufficient." In support of the views so expressed the court quotes from Orange Co. Bank v.

Brown, 9 Wend. 115, in which it is said that where
the notice is "designed simply to insure good faith
and fair dealing" on the part of the shipper, if it is
"brought home to the knowledge of the owner (and
courts and juries are liberal in inferring such knowl-
edge from the publication of the notice), is as effectual
in qualifying the acceptance of the goods as a special
agreement, and the owner at his peril must disclose the
value and pay the premium. The carrier in such case
is not bound to make the inquiry and if the owner
omits to make known the value and does not there-
fore pay the premium at the time of delivery it is
considered as dealing unfairly with the carrier, and
he is liable only to the amount mentioned in his notice
or not at all, according to the terms of his notice."
In the Oppenheim case the court "independent of the
qualifying provision contained in the receipt" sus-
tained the defendant's claim of exemption from lia-
bility on the ground of a want of good faith in not
disclosing the value of the goods. The court finds
the value was not disclosed in order to avoid "the
enhanced charges that would have been made had the
value of the package been disclosed." and that there
was "a designed suppression of the value of the
goods."

In the case at bar we find no evidence of a want of
good faith on the part of the shipper, nor was there
any designed suppression of the value. There is evi-
dence tending to show that the express company was
in the habit of using a stamp reading "Value asked
and not given," when it desired to limit its liability
where the value was not given. The shipping agent
of the plaintiffs testifies he did not know "that the
price we were paying for the carriage of a shipment
was regulated to some extent by the value of the goods.
I didn't know that the price paid for sending pack-
ages would be greater if it was a valuable package
than if it was simply a cheap package. I didn't know
that the rate would be regulated by the value of the

Wells, Fargo & Co. v. Cutter.

package I was shipping. I knew that jewelry and such things as that had a higher rate for shipment, because jewelry did not go with the regular express, as I understood it. I went by the weight of our goods. We did not have any costly things. They gave the rate, so much a hundred pounds, as the rate for merchandise, and I shipped by that value.'' This evidence is undisputed. There is evidence likewise undisputed to the effect that when the collector for the defendant brought the receipt in question to the plaintiff's office to collect the express charges, which were $98.10, the plaintiffs' credit man ''figured    *    *    * to see if the charges were correct.'' He found the charges ''lower than the tariff rate'' and called the attention of defendant's collector to that fact.    He was told by the collector ''that particular rate was made owing to the fact that five cases weigh more than a thousand pounds.'' This evidence clearly tends to show not only that there was no attempt on plaintiffs' part to suppress the value of the merchandise in order to secure a lower rate, but that plaintiffs' shipping agent did not even know that charges were based on value of merchandise so shipped, that as a matter of fact they probably were not so based on merchandise of this character and that instead of trying to save a few dollars by suppressing the actual value of the shipment, plaintiffs' credit man called defendant's attention to what he thought was an error in plaintiffs' favor, and thereupon defendant's agent explained that a reduced rate was granted by defendant because of the weight of the shipment. Apparently there was good faith on both sides in giving and accepting the shipment, at the rates paid, and it is difficult to believe that defendant when fixing and collecting express charges of $98.10 on the shipment had any question whatever that its value must have exceeded $50, and it appears that it was accepted with that understanding and without inquiry. We are of opinion that so far as the notice under consideration is concerned defend-

ant waived it as a limitation upon the value of the shipment in this case, and it was not assented to by plaintiffs. In Adams Express Co. v. Haynes, 42 Ill. 89-93-4, it was held that "the jury should be satisfied from the evidence that the person to whom it was given had full knowledge of the restrictions when the receipt was given; and to show that he was not so informed all of the circumstances attending the giving of the receipt may be admitted in evidence." It was further said that the shipper's assent to the limitation is necessary "and that is a question of fact for the jury." The shipper's agreement to the limitation "is not to be implied from the posting of notices or the simple delivery of one to the consignor. as this would be no more than limitation of his liability by *ex parte* action. Some evidence of assent to the terms of the notice is necessary from which a contract may be implied." If, as said in Adams Exp. Co. v. Haynes, *supra,* the plaintiffs in the case at bar had received the "receipt with full knowledge of its terms and conditions and intended to assent to the restrictions it contained, then it undoubtedly" would have become their contract as fully as if they had signed it. But, as we have indicated, we think the jury were justified by the evidence in concluding that neither party intended the notice in question to be applicable when the receipt was given. In Boscowitz v. Adams Exp. Co., 93 Ill. 523-531, reference is made to Oppenheimer v. United States Exp. Co., *supra,* the doctrine of that case is approved and it is said there is in that case "no departure from the uniform decisions of this court, that a carrier cannot be released from the duties and liabilities annexed to its employment unless the shipper assents to the attempted restrictions;" that "in respect to those duties designed simply to enjoin good faith and fair dealing, a notice alone if brought home to the knowledge of the owner of the property delivered for carriage will be sufficient," but it is permissible to introduce "evidence tending to show why

no valuation was stated." It is further said in that case: "Unless the limitation clause was assented to by the shippers with a view to release defendant from that liability which the law annexes to its employment, defendant cannot avail of it, and that which counsel maintain as a conclusion of the law is nothing more than the effect to be produced by the testimony offered to establish the fact insisted upon." In C. & N. W. Ry. Co. v. Chapman, 133 Ill., 96-108, it is said that while the carrier may by special contract exempt himself from strict liability imposed by the common law, "the law does not authorize common carriers to fix arbitrarily the value of goods delivered to them for transportation and thereby limit their liability in case of loss." In C. & N. W. Ry. Co. v. Calumet Stock Farm, 194 Ill. 9-12, it was held that a bill of lading which limited the carrier's liability and was both a receipt and a contract was not binding upon the appellee for two reasons, "first, there is no evidence in the record that the appellee assented thereto; and secondly, appellant cannot relieve itself by contract for an injury caused by its gross negligence;" and it is said that the questions of assent and negligence are questions of fact that "the *onus* is on the carrier to show the restrictions of the common law liability were assented to by the consignor." To the same effect are C., C., C. & St. L. Ry. Co. v. Patton, 203 Ill. 376-380; The Wabash Railroad Company v. F. E. Thomas, 222 Ill. 337-343. Whatever may be the rule in other jurisdictions, it is settled in this state that the question of the shipper's assent to the limitation is a question of fact. We are of opinion the evidence supports the conclusion that the limitation clause in the receipt was not assented to by the shipper in the case at bar and not binding upon the consignor.

It being conceded that the presumption is that the case of goods in controversy was lost through the negligence of the defendant, the notice could not avail to discharge the defendant as carrier from duties which

the law has annexed to its employment. In Hart v. Pa. R. R. Co., 112 U. S. 331, cited by defendant's counsel, it is said that "the limitation as to value has no tendency to exempt from liability for negligence." In Express Co. v. Caldwell, 21 Wallace, 264-272, the court said that a not dissimilar provision in a receipt "purported to relieve the defendants from no part of the obligations of a common carrier. They were bound to the same diligence, fidelity and care as they would have been required to exercise if no such agreement had been made." See also Black v. W. St. L. & P. Ry. Co., 111 Ill. 351-357. It is well settled that the law from considerations of public policy will not permit a carrier to contract for exemption from liability for losses occasioned by his own negligence. Adams Exp. Co. v. Haynes, *supra,* p. 94; Boscowitz v. Adams Exp. Co., 93 Ill. 523-529. In Boscowitz v. Adams Exp. Co., *supra,* it is held that "admitting the conditions in the receipt were understandingly assented to by the shippers and became a binding contract between the parties, still defendant would be liable for the full value of the goods if the loss was owing to negligence on the part of the railroad company." The statute provides: "That whenever any property is received by a common carrier to be transported from one place to another within or without this state, it shall not be lawful for such carrier to limit his common law liability safely to deliver such property at the place to which the same is to be transported, by any stipulation or limitation expressed in the receipt given for such property." R. S., chap. 27, sec. 1. In C. & N. W. Ry. Co. v. Chapman, *supra* (133 Ill. 96-107). the court reviews former decisions in this state and says: "Whatever may be the rule elsewhere, in this state the common carrier cannot contract for exemption from responsibility for a failure on its part or that of its servants to exercise ordinary care in the transaction of its business."

The judgment of the Municipal Court must be affirmed.                                    *Affirmed.*