62          OPPENHEIMER & Co. v. U. S. Ex. Co.          [Sept. T.

Statement of the case.

## HENRY OPPENHEIMER & CO.

### v.

## THE UNITED STATES EXPRESS COMPANY.

1. COMMON CARRIER—*restriction of liability.* An express company has the right to demand from a consignor such information as will enable it to decide on the proper compensation to charge for the risk, and the degree of care to bestow in discharging its trust; and a limitation of its liability not to exceed $50, unless the value of the goods forwarded is truly stated, if brought to the knowledge of the consignor, is reasonable and consistent with public policy.

· 2. A distinction exists between the effect of those notices by a carrier by which it is sought to discharge him from duties which the law has annexed to his employment, and those designed simply to insure good faith and fair dealing on the part of his employer. In the former, notice without assent to the attempted restriction, is ineffectual, while in the latter, actual notice alone will be sufficient.

3. SAME—*released by fraudulent concealment.* Where a party forwarded jewelry worth $3800, in a box, by express, taking a receipt which disclosed on its face that the company should not be held liable for any loss or damage of any box, package or thing, for over $50, unless the just and true value thereof was therein stated, and failed to state the value, and, in consequence thereof, was charged a less premium than otherwise would have been required, it was *held*, that, independent of the qualifying words in the receipt, the court would be inclined to exempt the company from liability, on the ground of want of good faith in not disclosing the value of the goods.

4. SAME—*restrictions not construed to exempt from carrier's own negligence.* The established legal construction of conditions in the contracts of carriers exempting them from liability is, not to treat them as providing against losses or injuries occasioned by actual negligence on their part.

5. SAME—*waiver of restrictions in contract.* The fact that an express company has settled for other losses without insisting on the restriction of its liability in the contract, will not preclude it from raising the question of its liability in a similar case subsequently arising.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action brought by the appellants, wholesale jewelers in the city of Chicago, to recover from appellee the

value of a box of merchandise which was delivered to the defendant at New York City for transportation to the plaintiffs. A jury having been waived in the court below, the cause was submitted to the court for trial, and judgment rendered for the plaintiffs for $50, from which judgment they appealed.

It appeared in evidence on the trial that, on the 6th of October, 1871, the firm of May & Stern, of New York City, delivered to the driver of one of the United States Express Company's wagons, a box, two feet long, eight inches deep and one foot wide, weighing 25 pounds, and marked " Henry Oppenheimer & Co., 134 Lake street, Chicago, Illinois." The driver called at the door of the place of business of May & Stern, where the box was delivered to him by a person in their employ, who, at the same time, handed to the driver for his signature a bill of lading or receipt, which had been previously filled out by another person in May & Stern's employ; nothing was said in regard to the contents of the box or their value, and there was no mark upon the package to indicate what it contained. The bill of lading or receipt taken was in the following terms :

"UNITED STATES EXPRESS COMPANY,
NEW YORK, *Oct.* 6, 1871.

"*May & Stern* delivered to us *one case,* valued at $—, marked as follows : ' *Henry Oppenheimer & Co.,* 134 *Lake St., Chicago, Ill.,*' which we undertake to forward to the nearest point of destination reached by this company, only perils of navigation excepted. And it is hereby expressly agreed that the United States Express Company are not to be held liable for any loss or damage, except as forwarders only; nor for any loss or damage of any box, package, or thing, for over $50, unless the just and true value thereof is herein stated; nor for any loss or damage by fire, the acts of God, or of the enemies of the government, the restraint of governments, mobs, riots, insurrection, pirates, or from any of the dangers

incident to a time of war; nor upon any property or thing, unless properly packed and secured for transportation; nor upon frail fabrics, unless so marked upon the package containing the same; nor upon any fabrics consisting of or contained in glass.

"For the proprietors,

"Contents unknown.                    "O. HANLENBECK."

The receipt was in the usual form of the United States Express Company's receipts, and was bound up with others in a book of printed blank receipts, which had been for a long time in the possession of May & Stern, and kept by them as a receipt book for goods delivered to the express company. The printed form consisted of all those portions of the receipt not appearing above in italics. The words and figures in italics were inserted in ink by Siegfried May (who was not living when the cause was tried,) in May & Stern's office, with the exception of the signature, which was written by the driver in pencil when he received the package.

Two expressmen testified that they had been accustomed— one of them for a year and a half, the other for three months prior to Oct. 1871—to call several times a week at May & Stern's office to receive goods; that they were accustomed to ask the value of packages, and always gave a receipt for them like the one above set forth.

It was the custom of the company to make an additional charge for the carriage of parcels when the value exceeded $50; which extra charge was then one-eighth of one per cent on the entire value, if the distance was less than 300 miles, and one-fourth of one per cent if the distance was greater.

The charge for freight upon the box in question was $1.40. It contained watches and jewelry of the value of $3800. The charge on that value, if disclosed, would have been $10.90.

It appears that extraordinary precautions were taken for the safe carriage, keeping and delivery of valued packages. All the valued packages in the office at Chicago at the time

of the fire of October 8 and 9, 1871, were saved, and none
of the valued goods which came through from New York
upon the train by which the box in question was forwarded
were lost.   This box was placed on board the Erie train at
Jersey City on the 6th of October, 1871, and arrived at Chi-
cago on Sunday morning, the 8th of that month, and was
there deposited with the rest of the ordinary freight, and was
destroyed by fire on the succeeding night, admittedly without
fault or negligence on the part of the company.

The testimony of May & Stern, and of the shipping clerk
who took the receipt and delivered the goods to the express
company, and also that of the plaintiffs, was, that they were
not aware of the printed contents of the receipt, and that
they never assented to any such obligation or contract as the
receipt purports on its face.

Messrs. ROSENTHAL & PENCE, for the appellants.

Messrs. AYER & KALES, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The question presented by this record is, as to the effect of
the clause in the receipt in this case restricting the liability
of the company to $50, unless the value of the package was
stated.   The denial in the testimony that the consignors had
knowledge of this condition in the receipt, must be held to
be overcome by the circumstances of the case.   These con-
signors were business men, merchants, engaged in an exten-
sive traffic in the city of New York.   They had, for a series
of years, been doing business with this company, making
shipments of goods over its lines for a period of at least a
year and a half prior to the delivery of the package in ques-
tion, these shipments occurring as often as two or three times
a week.   They were provided with a book containing the
printed blank receipts of the company in general use, which
they were in the habit of filling out themselves and present-

ing to the company's agent for signature when he called to receive a package.

The terms and conditions on which the company received property for transportation were clearly expressed in the body of the receipt, and in a way not calculated to escape attention. It must be supposed that these men paid some attention to the transaction of their business, and were reasonably well informed in regard to the nature of their contracts. That they should have been so doing business with this company for years, handling, filling out and procuring the execution of these shipping receipts without a knowledge of their general character and effect, it is difficult to believe. They must be held to have had such knowledge.

The position is taken by appellants' counsel, that it is incumbent upon the express company to show, not only that the consignors had knowledge of the contents of the receipt, but also that they assented to the same, and consented to be bound thereby.

A distinction exists between the effect of those notices by a carrier which seek to discharge him from duties which the law has annexed to his employment, and those, like the one in question, designed simply to insure good faith and fair dealing on the part of his employer—in the former case, notice alone not being effectual, without an assent to the attempted restriction; while in the latter case, notice alone, if brought home to the knowledge of the owner of the property delivered for carriage, will be sufficient.

The rule in this respect is thus laid down by the Supreme Court of New York: "If he (the carrier) has given general notice that he will not be liable over a certain amount unless the value is made known to him at the time of delivery, and a premium for insurance paid, such notice, if brought home to the knowledge of the owner, (and courts and juries are liberal in inferring such knowledge from the publication of the notice,) is as effectual in qualifying the acceptance of the goods, as a special agreement, and the owner, at his peril,

must disclose the value and pay the premium. The carrier, in such case, is not bound to make the inquiry, and if the owner omits to make known the value, and does not therefore pay the premium at the time of delivery, it is considered as dealing unfairly with the carrier, and he is liable only to the amount mentioned in his notice, or not at all, according to the terms of his notice." *Orange Co. Bank* v. *Brown*, 9 Wend. 115. See also 2 Greenleaf Ev. sec. 215; Ang. on Carriers, sec. 245; *Farmers' and M. Bank* v. *Champlain Trans. Co.* 23 Vt. 186; *Moses* v. *Boston and M. Railroad*, 4 Foster, 85.

The distinction above adverted to has been recognized by this court. *Western Trans. Co.* v. *Newhall et al.* 24 Ill. 466.

The common carrier is liable, as we find it frequently laid down, in respect to his reward, and the compensation should be in proportion to the risk.

As the carrier incurs a heavy responsibility, he has a right to demand from the employer such information as will enable him to decide on the proper amount of compensation for his services and risk, and the degree of care which he ought to bestow in discharging his trust. *Hollister* v. *Nowlen*, 19 Wend. 244. And such a limitation of the carrier's liability as the one in question is held to be reasonable and consistent with public policy.

But independent of the qualifying provision contained in the receipt, we should be inclined to sustain the defendant's claim of exemption from liability on the ground of a want of good faith in not disclosing the value of the goods.

These consignors knew that there was a recognized distinction, on the part of the company, between valuable packages and ordinary freight; that they had their separate collectors of the two kinds, and the consignors were provided with signs to hang out to denote which one of the collectors they had goods for. They must have displayed the sign indicating that they had ordinary merchandise to be carried, as the box in question was delivered to that collector. In the blank receipts which they were so frequently filling out, there was a

blank space after a dollar mark for filling in the amount the goods were valued at; this was a virtual request on the part of the company to state the value. There was an actual attempt here by the agent of the shippers to fill in this blank space, but instead of inserting 3800 (the value), a mark or character was inserted inexpressive of any value. This shows that there was a designed suppression of the value of the goods. That was unfair conduct on the part of the shippers of the goods. The effect of such conduct to relieve the carrier from his liability as insurer, is asserted in the cases of *The Chic. and A. R. R. Co.* v. *Thompson,* 19 Ill. 578, and *American Express Co.* v. *Perkins,* 42 id. 459. Had the true value of the goods been disclosed, there would have been an extra charge of $9.50, increased precautions would have been taken for the safety of the goods, and, as the evidence shows, they would have been saved.

The court below was justified in coming to the conclusion that the consignors elected to take the risk of the loss, rather than subject the plaintiffs to the enhanced charges that would have been made had the value of the package been disclosed.

It is unnecessary to consider the effect of that provision in the receipt, which has been urged upon our attention by appellants' counsel, that the company are not to be held liable for any loss or damage except as forwarders only, as that provision and the one in question are distinct and severable, and the one might be held to be obligatory upon a party, where the other would not be.

We are urged, on behalf of the appellants, to put this construction upon the receipt: that the limitation of liability to $50, in case of loss, relates only to the duty of the company while acting as forwarder, and not while acting as carrier. We do not regard the instrument as reasonably susceptible of any such interpretation. The plain reading as well as meaning of the limitation in question is, that the company are not to be held liable for any loss or damage of any package for over $50, unless its value be stated. And the limita-

tion is not liable to the objection urged by appellants' counsel, that it is invalid because the effect of it would be to relieve the company from liability even in case of loss occasioned by its own negligence. The established legal construction of such conditions is otherwise. They are not to be read as providing against losses or injuries occasioned by actual negligence. Story on Bailm. secs. 570, 571; *Lager* v. *Ports. S and P. and E. R. R. Co.* 31 Me. 228. Numerous are the decisions where the validity of such provisions has been recognized and affirmed.

It is said the practice and course of dealing had been such on the part of the company as to amount to a waiver of the limitation, and to induce the consignors to believe that it would not be insisted upon. We do not find in the evidence sufficient to justify the assertion that the company's course of dealing had been such as to lead either the appellants or their consignors to infer that it did not insist upon the conditions embodied in the printed receipts.

Because the company, as shown by the evidence, had settled for losses of bulky goods without raising the point whether, by the terms of the contract, it was discharged from liability, and, in one instance, paid the appellants for a loss exceeding $50 where there was no valuation, the company was not thereby precluded from questioning its liability in any case that might arise thereafter, and the appellants had no right to expect that it would not do so. The written contract speaks for itself what it is, and is not to be thus contradicted or modified by parol evidence. *Evans* v. *Soule,* 2 Maule & Sel. 2.

The judgment of the court below will be affirmed.

*Judgment affirmed.*