# THE CHICAGO AND NORTHWESTERN RAILWAY COM-PANY

## v.

## SAMUEL W. CHAPMAN.

*Carriers—Injury to Stock While in Transportation—Limitation of
Liability—Negligence—Evidence—Instructions.*

1.   A common carrier can not arbitrarily fix the value of freight carried
by it below its real value without the consent of the owner.

2.   There is no distinction between "gross negligence" and the "want
of ordinary care."

3.   A common carrier can not, by stipulation in a bill of lading, relieve
itself from liability for its own negligence.

4.   It *seems* that the carrier may require from the shipper a correct
statement of the value of freight and base the charge for transportation
upon the risk incident to its carriage.

### [Opinion filed May 25, 1889.]

APPEAL from the Circuit Court of Kane County; the Hon.
ISAAC J. WILSON, Judge, presiding.

Messrs. W. B. Keep, R. N. Botsford and W. C. Goudy, for appellant.

There was a contract on a valuable consideration fixing the value of the horse for the purposes of this shipment, and the liquidated damages, in case of any injury to it, at $100.

That such a contract was in fact made there can be no question. The plaintiff specially declared on the contract in his first and second counts, alleged that he signed it by his agent, Longshore, and that the horse was delivered for carriage to the appellant under it. Longshore also testified that he acted as Chapman's agent in the matter of the shipment. That there was a consideration for this contract is equally clear. The receipt of the property by the defendant, and the giving of free transportation to the shipper's agent, were of themselves a consideration; moreover, this appellant had two classifications of live stock as freight. Appellee agreed that the value of the horse should be $100, in consideration of the carriage at the reduced rate.

The contract that the value of the horse, or the liquidated damages in case of any injury to it, should be $100, was valid.

The agreement as to the value of the horse, or the damages to be recovered in case of injury to it, is not a limitation of the carrier's liability for the negligence of his servants. The carrier, under such agreement, is not exempted from any of his liability; the parties have merely agreed on the value of the horse for the purposes of the shipment, or, as put in some of the authorities to be hereafter referred to, have adopted this method of liquidating the damages.

As was said in Hart v. Pa. Co., 112 U. S. 331, " The articles have no greater value for the purposes of the contract of transportation between the parties to that contract."

Or, as stated in L. & N. R. R. v. Sherrod, 4 S. Rep. 29, " Such special contract is in the nature of an agreement to liquidate the damages."

Under such an agreement the carrier is liable for his own and his servant's negligence, or for any other loss or injury for which he would have been liable independently of such a contract.

In Hart v. Pa. Co., 112 U. S., 340, 341, the court say:

" The limitation as to value has no tendency to exempt from liability for negligence. * * * The carrier must respond for negligence up to that value."

And in L. & N. Co. v. Sherrod, 4 S. Rep. 30, the court say: " Limitations as to value do not come under the operation of the rule that a carrier can not, by special contract, exempt himself from liability for the consequences of his own negligence, and, ordinarily, are not calculated to induce negligence. To the amount of the agreed valuation the carrier is responsible for loss occasioned by his neglect or by any of the risks or accidents for which he is answerable."

That an agreement as to the value of property shipped, or liquidating the damages recoverable for injury to it, is valid where the goods are lost by the negligence of a carrier, and does not come within the rule that a carrier can not limit his liability for negligence, is now well established. Hart v. Pa. Co., 112 U. S. 331; P. Ins. Co. v. Erie T. Co., 117 U. S. 322; Graves v. R. R. Co., 137 Mass. 37; R. R. Co. v. Sherrod, 4 S. Rep. 29; Harvey v. R. R. Co., 74 Mo. 538; Brown v. R. R Co., 18 Mo. App. 568; Ghormley v. Dinsmore, 53 N. Y. Supr. Ct. 37; Hill v. R. R. Co., 144 Mass. 284; Ry. Co. v. Weakly, 8 S. W. Rep. 134; Ry. Co. v. Henlein, 52 Ala. 606; Squire v. R. R. Co., 98 Mass. 245; Maginn v. Dinsmore, 70 N. Y. 411; The Hadji, 18 Fed. Rep. 459; The Lydian Monarch, 23 Fed. Rep. 298; Elkins v. Transp. Co., 81 Pa. St. 315; Belger v. Dinsmore, 51 N. Y. 166; Steers v. Steamship Co., 57 N. Y. 1; Muser v. Holland, 17 Blatchf. 412; Hopkins v. Westcott, 6 Blatchf. 64; Wetzell v. Dinsmore, 55 N. Y. 496; Earnest v. Express Co., 1 Woods, 573. The leading case on this subject is Hart v. Pa. Co., 112 U. S. 331.

This case is approved in the later case of Phœnix Ins. Co. v. E. T. Co., 117 U. S. 322.

The decision in the Hart case is directly in point in our favor here. As noticed in the opinion, the Supreme Court of the United States has always held that a carrier can not contract against *any* negligence on the part of himself or his servants. This is a stricter rule than prevails in this State, for

our Supreme Court has repeatedly held that a carrier may contract against any negligence of his servants other than that which is gross. I. C. R. R. Co. v. Read, 37 Ill. 484; I. C. R. R. Co. v. Morrison, 19 Ill. 136; Adams Express Co. v. Haynes, 42 Ill. 89; Arnold v. I. C. R. R., 83 Ill. 273; T. W. R. R. v. Beggs, 85 Ill. 80. But notwithstanding the stricter rule which prevails in the United States Supreme Court, that court upheld the stipulation as to value in the contract before them.

Although the precise question involved in the case at bar has not been directly passed on in our courts, the Appellate Court has, in effect, affirmed the principle for which we contend. In R. R. Co. v. Harmon, 17 Ill. App. 640, a bill of lading provided that " in case of any damage or a loss to any of the stock while in course of shipment, the same, so far as it shall fall upon said company, shall be computed at the value or cost of the same at the place of shipment under this bill of lading."

This agreement was held valid and binding on the shipper. The court say :

" The value of the animals at the time and place of shipment shall fix the basis upon which the damages were to be computed. There was nothing unreasonable or against public policy in this limitation fixing the value at the time and place of shipment as the basis upon which the damages should be computed."

Applying the principles of these cases to the case at bar, the lower court should have held, in accordance with our contention, that plaintiff could recover only $100. It has been held that where there is an alternative higher rate at which the property could be shipped at carrier's risk for the full value, a limitation of value where the shipment is at a lower rate, is valid. Hart v. Pa. Co., 112 U. S. 331; Hill v. R. R. Co., 144 Mass. 284; L. & N. Co. v. Sherrod, 4 S. Rep. 29; Ry. Co. v. Weakley, 8 S. W. Rep. 134; Ghormley v. Dinsmore, 53 N. Y. Supr. Ct. 37.

Messrs. SHERWOOD & JONES and A. H. BARRY, for appellee.

The essential elements of a contract are, that there must be two or more parties capable of using their wills freely, a subject-matter not contrary to public policy, and a sufficient consideration.

The appellant set up this contract in defense of this action, by which it is claimed that plaintiff agreed that the company should not be liable to exceed $100 for any loss or injury resulting to the horse shipped, and that the value of the horse should not be estimated at more than that sum.

When plaintiff shipped this horse he had the alternative of signing this contract or not shipping his horse. He is not even permitted to exercise his lawful right to tender reasonable freight and have his horse carried ; for " the agent is not permitted to receive or ship any such valuable animal until a proper contract or release is signed."

Who is to determine what is a proper contract or lease ? If it means that the shipper shall take all risk of damage that the stock may do to themselves, that would no doubt be "proper," for the law would not hold a carrier liable for such damage even without a release by the shipper. If it means a release of all damages resulting from unavoidable accidents not caused by the negligence of the carrier or its agents, that would no doubt be a "proper" release, under the law. But there is no law that will authorize a carrier to demand any release as a condition precedent to taking the stock. Neither is there any law which will authorize the carrier, or its agents, to demand that the shipper shall fix any value on his stock before he will receive it, if the shipper but pays or tenders reasonable freight charges. But under the rules and regulations of appellant, the shipper is deprived of his option to ship at carrier's risk and pay full freight. Such an option is not open to him.

Before the company will receive a horse at all, under these rules (and if it has any others we are in ignorance of them— appellant has not shown any), the shipper must agree to a valuation of $100 on his horse, no matter how valuable it may be.

This proposition may be denied, and the statement be made that the shipper could make a special agreement and note that

on the contract, but this is not true. It is true that there are words in the contract that would at first blush indicate as much; but Johnson's testimony is that " they had but two classifications. In one, the shipper was required to sign a contract fixing the amount of damages that could be recovered in case of loss or injury to a single horse at $100 ; in the other classification, for which a higher rate was charged, the horses, or live stock, could be shipped without any limitation to the amount of damages," etc. It follows, then, beyond contradiction, that the company alone fix the value to which they will be liable. The shipper has no voice in the matter whatever. The agent could not make any special arrangements with him if he would, for the company had no classification which allows it. Neither is it true that the shipper could ship at carrier's risk, by paying more freight; for, as we have seen, the rules prohibit the agent from receiving a horse at all until a release is signed. Therefore, the alleged contract is made under duress of circumstances. There is allowed the shipper no freedom of choice nor freedom of will in the matter at all.

As the Supreme Court of the United States says in the case of Railroad Co. v. Lockwood, 17 Wallace, " The carrier and his customer do not stand on a footing of equality. The latter is one individual of a million. He can not afford to higgle or stand back and seek redress in the courts. His business will not admit of such a course. He prefers, rather, to accept any bill of lading or sign any paper the carrier presents—often, indeed, without knowing what the one or the other contains. In most cases he has no alternative but to do this or abandon his business. If the customer had any real choice—if he had a reasonable and practicable alternative, and if the employment of the carrier were not a public one, charging him with the duty of accommodating the public in the line of his employment, then, if the customer chose to assume the risk of negligence, it could with more reason be said to be his private affair, and no concern of the public."

What is there said of an agreement pertaining to negligence may, with equal force and propriety, be said of an agreement

as to the value of the property shipped, for there is no more freedom in the one case than in the other.

There is no pretense that there is any rate fixed by the company intermediate between a valuation of $100 and a carrier's risk.  It is claimed that the rate charged was on the basis of $100 valuation; but if the shipper should insist on any other valuation than the one arbitrarily fixed by the company, then he would have to pay rates based on the carrier's risk; and the company had no lawful right to make any limit on valuation, if it got paid for taking all the risks itself.

In Hart v. Pa. Railroad Co., 112 U. S., upon which appellant so firmly relies, the court stated that "the distinct ground of our decision is, that when a contract of the kind signed by the shipper is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld," etc.   In order for the contract to be fairly made, the shipper must have an election as between two or more propositions; for if the company's proposition is all one way, and presents no alternative but to accept it as it is or not ship his stock, he has no choice, no freedom of action.   He is coerced to sign or not ship.

Tested by the rule of freedom of will by the fairness and reasonableness of the contract, which is made the rule in the Hart case, and also in the Lockwood case cited above, and in fact by every case holding this doctrine, this contract does not come within the scope of any of such cases.   In the Hart case there were no conditions precedent made by the carrier to the shipper's right to ship, or to the carrier's receiving the stock. The contract did not provide that the shipper should sign a release of any kind before the carrier would receive his stock, but the terms and conditions named in the contract were "admitted and accepted" by the shipper "to be fair and reasonable," and the valuation was agreed upon.   The rate of freight was agreed upon in specific terms, and nothing left for intendment or explanation, and no explanations were offered.

In fact, there is no single point of similarity between the contract in that case and in this.

The authorities are uniform all over the United States that all contracts of this character are to be construed strictly, and most strongly against the carrier. We believe not one single authority can be produced which holds that any other rule of construction applies.

"Where general words in the contract of a common carrier, limiting his liability, may operate without including the negligence of the carrier, or his servants, it will not be presumed to include it. Every presumption is against such an intention, and the contract will not be construed as exempting from liability for negligence unless it is expressed in unequivocal terms." Maynard v. S. B. & N. Y. Ry. Co., 71 N. Y. 180; Holsapple v. R. W. & O. Ry. Co., 3 Am. and Eng. R. R. Cases, 487.

There is not only no attempt made by this contract to exonerate the company from loss by negligence, but, on the other hand, it excepts the result of negligence from the stipulations in the contract, and especially the results from the collision of trains.

Can a common carrier for hire, in this State, limit, by contract, his liability to a shipper in case of loss occasioned by gross negligence of the carrier?

The law would seem to be settled in this State, that under no circumstances can a carrier contract against his own gross negligence. Illinois Central R. R. Co. v. Adams, 42 Ill. 474; Ill. Cent. R. R. Co. v. Read, 37 Ill. 485; Oppenheimer v. U. S. Express Co., 69 Ill. 62 ; Black v. Goodrich T. Co., 55 Wis. 319; New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344; Railroad Co. v. Lockwood, 17 Wall. 357; Bank of Kentucky v. Adams Express Co., 93 U. S. 174; Candee v. W. U. Telegraph Co., 34 Wis. 471; Hibbard v. Telegraph Co., 33 Wis. 558 ; Morrison v. Construction Co., 44 Wis. 405 ; U. S. Express Co. v. Backman, 28 Ohio St. 144.

C. B. Smith, J. The record in this case discloses this state of facts: In June, 1887, and for a year or more before that time, appellee was the owner of a valuable pacing race horse

named "Riley," which had been kept and used for racing purposes for the years 1886 and 1887. In June, 1887, plaintiff's horse, with many others, was in the races then held at Rockford, Illinois. The races there were brought to a close on the 4th of June, 1887, and the owners of the various horses were ready to go to Freeport, where the next meeting, or series of races, was to be held in a short time. While the owners of the horses were still on the race track, or at the grounds where the races were held, the agent of the appellant went in person to the race track and had a consultation with the owners, and those in charge of the horses, and asked them to ship to Freeport over the Chicago & North Western Railway, and promised them that if they would ship their horses and baggage over his road he would give them a special train for their horses, and attach a passenger. coach to it for the men.

This proposition was accepted by the owners and men in charge of the horses, and the special train was made up, consisting of eight or ten cars of horses and the passenger coach. The horses were placed in the cars and billed for Freeport, but whether the horses were billed before or after they were put in the cars does not appear, nor is it material which was done first.

James Longshore was in charge of plaintiff's horse, the plaintiff being absent. A bill of lading was made out and handed to plaintiff's agent. This bill of lading was headed or entitled thus:

"Chicago & North Western Railway Co.  Live Stock Contract."

Among other things, this contract had the following provision, viz: "No liability will be assumed on horses or valuable live stock for more than $100 per head, unless by special agreement, noted hereon, and agents are not permitted to receive or ship such valuable animals until a proper contract or release is signed by the owner or shipper thereof. And it is agreed between the owner of these animals and the said railway company that in case of accident, resulting in injury to the animals, the value thereof shall in no case be estimated at more than $100 for each animal so injured."

Another provision of the contract read thus:

"Rockford, Ill., Station, June 4, 1887.

"Received of J. Longshore, four horses, to be delivered to J. Longshore at Freeport Station, at special rates, Tff dollars per car for horses, mules, etc. In consideration of which and for other valuable considerations it is hereby mutually agreed that said company shall not be liable for loss by jumping from the cars, delay of trains not caused by negligence as aforesaid, or any damage said property may sustain, except such as may result from a collision of the trains or when the cars are thrown from the track in course of transportation."

There was also a provision in this contract entitling one man with two or three cars to a pass, to go with his stock, and, in certain cases, one man with one car of stock might be entitled to a pass. These are all the provisions of this contract that are involved in this controversy.

At the time this bill was made out and handed to Longshore, the agent asked him no questions as to the value of the horse, nor did Longshore give him any information on that subject, so far as the record shows. This contract was signed by the agent of the company and by Longshore, as the agent of Chapman, the owner. Soon after, the train, with the horses and men, started on its way to Freeport, and soon after it started, commenced going on a very rapid rate of speed. The witnesses, several in number, all agree that the train was running from thirty to forty-five miles an hour. This they determined by timing the train with their watches. One witness testifies the train was running at the rate of a mile in one minute and eleven seconds. While this rate of speed was being made the train collided with a construction train near Ridotte. The construction train was backing down and met the special train containing the men and horses on a curve, without any kind of warning to either train; at least none is shown in the record. The result was, as stated by some of the witnesses, that "everything was all smashed up." Plaintiff's horse was so injured that he is wholly worthless.

No explanation was given or offered on the trial below in justification of the conduct of the defendant's servants,

either for running the train at so high a rate of speed, or for
the collision of the two trains. The crews of both trains were
discharged by the officers of the company the next day after
the collision. The evidence in the case clearly established
very gross, if not reckless and criminal negligence on the part
of the servants in charge of these trains, or of those directing
the movement of trains.

After the injury to plaintiff's horse, the defendant tendered
the plaintiff $110, and insisted, under the terms of the bill of
lading or shipping contract, that $100 was the limit of its lia-
bility. This amount the plaintiff declined to accept, and
brought suit for the full value of his horse. The declaration
contained two counts. The first count recited the contract in
full, and the second only the clause limiting the defendant's
liability to $100. Both counts alleged that the accident
and injury to the plaintiff's horse was caused by the gross
negligence of the defendant's servants operating the trains,
and that the contract limiting the value of the horse and
liability of the defendant to $100 was no protection to the
defendant when the injury was caused by the gross negligence
of the defendant.

The pleas were the general issue and two pleas of tender
and payment into court of $110.

On the trial it was stipulated that Mr. Burton Johnson, the
assistant general freight agent of the railway company, would,
if present, testify that at the time this freight was shipped at
at that station the company had two classifications under
which live stock was shipped. In one class the shipper was
required to sign a contract fixing the amount of damages that
he could recover in case of loss or injury to a single horse at
$100; and that they also had another classification, for which
a higher rate of freight was charged, under which the horses
or live stock could be shipped without any limitation to the
amount of damage that could be recovered in case of their
loss or injury.

The defendant also offered to prove that these classifications
were shown by lists published by the company, under the
inter-state law. The Western classification of the inter-state
law was offered in evidence as follows:

C. & N. W. Ry. Co. v. Chapman.

"Live stock in car loads, limited under contract—See tariff. Live stock in car loads, carrier's risk—See tariff."

The plaintiff and his agent, Longshore, both testified that they never knew or heard of any other mode or classification or rate for shipping live stock over defendant's road except the one used by the company at the time of the accident to plaintiff's horse, and that neither the defendant nor its agent had given them any notice of any other different mode or rate of shipment than the one used on this occasion. Chapman testifies he had frequently shipped horses over defendant's road before, and had always shipped under the contract used on this occasion, and did not know they had any other.

On the trial, plaintiff called a number of witnesses acquainted with the value of this horse, and they all placed his value at $3,500 to $4,000. One witness for plaintiff placed his value at from $3,000 to $4,000.

One witness only was called for defendant, who, after having heard of the speed of the horse from other witnesses, placed his value at from $5,000 to $6,000, if he had been sound, he supposing the horse had some blemishes about one of his limbs that affected his value somewhat, but he was the only witness who knew of any supposed blemish. The proof also showed that the horse was fast and that he had a record of 2:20, and won several races at that speed and from that to 2:25.

The case was tried before a jury and the plaintiff had a verdict for $3,290, and, after overruling a motion for a new trial, the court rendered judgment for the plaintiff on the verdict.

The defendant brings the record here on appeal, and asks for a reversal of the judgment. Numerous errors are assigned, but they are all involved in a single question, and that is whether the contract of shipment, signed by both parties, limiting the right of recovery for the horse to $100, when the proof shows he was injured by the gross negligence of the defendant, can be interposed as a successful and valid defense, so as to prevent the plaintiff from showing and recovering the full value of his horse.

The court below, on behalf of the plaintiff, instructed the jury, in substance, that while it was lawful for the defendant to enter into the contract shown in the case, still it was against public policy and the law to allow it to be available as a defense in case the proof should show the injury to the horse was caused by the gross negligence of the defendant's servants, and that if the proof showed the defendant guilty of gross negligence, then the jury should award the plaintiff the full value of his horse, notwithstanding the contract.

The defendant asked the court to instruct the jury "that if they believed from the evidence that the defendant had two classes of rates, the lesser rate being based upon a valuation, as prescribed in this contract, and a higher rate for more valuable horses, based upon a valuation to be fixed by special agreement, signed by the shipper or owner of the animal, and that the contract in this case was based upon the lower rate, and thereby secured the shipment of the horse at a less rate than he could have been shipped under a special agreement, then the plaintiff will be limited in his recovery upon the contract to the value of the horse as fixed therein;" but the court refused to give this instruction as asked, but added to it the following words: " provided the injury complained of was not occasioned by the negligence of the defendant;" and then the court gave the instruction as modified.    The defendant excepted to the giving of the instruction as asked for the plaintiff and also to the refusal of the court to give its instruction as asked, and to the action of the court in giving the instruction as modified.

These two instructions present the two theories upon which the case was tried in the court below.    The defendant offered no evidence below tending to contradict either the negligence of the defendant in operating the train or to reduce the value of the horse below what it was found to be by the verdict of the jury.

The evidence clearly establishes these propositions:

1.    That defendant shipped and injured plaintiff's horse as alleged.

2.    That the injury to plaintiff's horse was the result of gross negligence of the defendant.

3. That the horse was worth the full amount of the verdict.

4. That the defendant had two methods and two rates for shipping live stock, the one lower than the other.

5. Neither the plaintiff nor his agent had any notice or knowledge of but one rate used on the occasion of this shipment.

We shall, therefore, consider the case upon the theory that the defendant was guilty of gross negligence in causing the injury to the horse, because that is the proof.

The defendant places its defense broadly upon the terms of the limitation in the contract restricting the extent of its liability to $100 in the case of loss or injury to the horse, and insists that the contract is not against the negligence of its servants, but simply a method of ascertaining in advance what shall be the measure of defendant's liability in case of injury of or loss to the stock.

The plaintiff's contention is directly the reverse of this proposition. He insists that the direct effect of this contract is to relieve the defendant from the consequences of its negligence just to the extent of the difference between the actual value of the horse and the $100 named in the contract, which in this case is about $3,200.

The authorities upon this question outside of this State are at war with each other and are utterly irreconcilable. There is much authority, and of a very high character, upon both sides, and anything like a full and general review of them would extend this opinion far beyond our necessity or purpose.

But a brief reference to a few of the authorities may be justified upon the ground of the importance of the question involved, as well as the amount of money involved in the contest.

The principal case relied on by defendant as supporting their contention broadly and fully is the case of Hart v. The Pennsylvania Company, 112 U. S. 331. That case is, in all material respects, like the one at bar. Two race horses were shipped and injured, with a contract limiting their value to

$200 each in case of loss, and providing the railroad company should not be liable for any greater sum in case of loss.

The case came before the Supreme Court of the United States on appeal, and the chief question in the case was whether the contract, with its limitation of $200, could be interposed in bar of the plaintiff's right of recovery for the full value of the horses, where the proof showed the injury to the horses was the result of the defendant's negligence. The proof showed the horses were injured through the negligence of the defendant. The court there held that the shipper was estopped to show that the real value of the horses was greater than that stated in the bill of lading, and that the company had the legal right to limit its liability by contract, and that such limit was binding and conclusive against the shipper, even where the injury to the shipper was the result of the defendant's negligence in transporting the horses. The court further says: "The limitation as to value has no tendency to exempt from liability for negligence. It does not induce a want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The shipper is estopped from saying the value is greater."

In harmony with Hart's case, and maintaining the same doctrine, are the following cases: Railroad Co. v. Sherrod, 4 S. Rep. 29; Insurance Co. v. Erie Toy Co., 117 U. S. 332; Graves v. R. R. Co., 137 Mass. 37; Hill v. R. R. Co. 144 Mass. 428; Railroad Co. v. Weakly, 8 S. W. Rep. 134; Ghormly v. Dinsmore, 53 N. Y. Sup. Ct. 36; Harvey v. Railroad Co., 74 Mo. 548.

The foregoing authorities will all be found in substantial harmony with the rule in Hart's case.

As against these authorities we think the great weight, both in number and value, are found directly against them. We refer to a few of them.

In McFadden v. The M. P. R. Co. (Sup. Ct. Mo.), 4 S. W. Rep. 689, there was a contract with a limitation like the one at bar, and the defendant insisted that that was the limit of its liability, but the court says: "The law is firmly established

in this State that the common carrier can not, by any sort of stipulation, exempt himself from the consequences of his own negligence." In Black v. Goodrich Trans. Co., 55 Wis. 319, there was a shipment of a barrel of whisky, and a contract limit in the bill of lading put upon the right of recovery in case of loss at $20. The whisky was lost by the negligence of the defendant, and the company pleaded this limit in defense. The court says in its opinion: "We think it has been settled by the decisions of this court, the Supreme Court of the United States (the Hart case was decided afterward) and many of the State courts in which the question has been considered, that a common carrier of persons or property can not, by agreement, however plain and explicit, wholly relieve himself from responding in damages to the party injured when such injury is the result of gross negligence on the part of the carrier or his servants. This rule is, by most of the courts, founded upon public policy, and a want of consideration to support the agreement. This whole question has been so often, so thoroughly and so exhaustively discussed in the decisions cited, that it would be a waste of time, as well as futile, to attempt to add anything to the confirmation of the general rule as stated"—citing Navigation Co. v. Bank, 6 How. 344; Railroad Co. v. Lockwood, 17 Wall. 357; Bank of Ky. v. Adams Ex. Co., 93 U. S. 174; Candee v. Telegraph Co., 34 Wis. 471; Hibbard v. Telegraph Co., 33 Wis. 558; Morrison v. Construction Co., 44 Wis. 405.

In the case of Moulton v. St. Paul, M. & M. Railway Co., 31 Minn. 85, the action was to recover the value of two horses, each of the value of $200. There was a limit in the bill of lading, signed by both parties, providing that in no event would the defendant be liable for more than $100 on each horse, in case of loss. The horses were lost or injured by the negligence of the defendant. The court says:

"The law has been determined in this State, and most of the United States, as well as in the Federal Supreme Court (this also was before the Hart case), to be that a common carrier of goods can not, by contract, relieve himself from liability for his own negligence. * * * The rule itself rests upon con-

siderations of public policy, and upon the fact that to allow a common carrier to absolve himself from the duty of exercising care and fidelity is inconsistent with the very nature of his undertaking. * * * The same reasons which forbid that a common carrier should, even by express contract, be absolved from liability for his own negligence, stand also in the way of any arbitrary re-adjustment of the measure of damages whereby the carrier is partially relieved from such liability. It would be absurd to say that the requirement of the law as to such responsibility of the carrier is absolute, and can not be laid aside even by the agreement of parties, but that one-half or three-fourths of this burden may be laid aside by means of a contract limiting the recovery of damages to one-half or one-fourth of the known value of the property. This would be a mere evasion, which the law will not tolerate."

In the case of U. S. Ex. Co. v. Bateman, 28 Ohio St. 144, there was a shipment of a large quantity of whisky, subject to what was understood and known by the plaintiff below as "the twenty dollars clause" in the bill of lading. The whisky was lost by the negligence of the defendant, and suit brought to recover for its full value. The court in that case says:

"The Ohio cases hereinbefore cited make it clear that common carriers can not, by contract, exempt themselves from liability from full damages for a loss occasioned by their own negligence or that of any of their servants. No more can they stipulate for a partial exemption from liability caused by like negligence. The public policy that avoids a contract for total exemption will hold a contract void that provides for a partial exemption. In such case the fact that by reason of such contract the carrier undertook the transportation of the goods for a diminishable reward can avail him nothing."

In The Railroad Co. v. Simpson, 30 Kan. 645, the contract was for a limited liability in case of loss, but the court held that such a contract will be no protection against a recovery for the full value where the loss was occasioned by the negligence of the carrier. And to the same effect are the following cases: Grogan v. Express Co., 114 Pa. St. 523; Express Co. v. Sands, 55 Pa. St. 140; Express Co. v. Holmes (Sup.

Ct. Pa.), 9 Atl. Rep. 166; Steamboat City of Norwich, 4 Ben. 271; Galt v. Express Co. (Sup. Ct. Dist. Columbia); Orndorf v. Adams Express Co., 3 Bush (Ky.), 194; Marr v. The Telegraph Co. (Sup. Ct. Tenn.), 3 S. W. Rep. 496; Railroad Co. v. Abels, 60 Miss. 1071.

But we turn now to consider briefly the cases decided in our own Supreme Court, and which we regard as conclusive against the contention of the defendant, without regard to the decisions in other States.

In Ill. Cent. R. R. Co. v. Adams, 42 Ill. 474, there was a contract in the bill of lading limiting the liability of the defendant in case of loss to a sum greatly less than the value of the property shipped. The shipment consisted of a lot of hogs, and through the negligence of the company some of the hogs died for want of being drenched with water from the tanks. Suit was brought, and the plaintiff had judgment for the full value of his hogs, notwithstanding the limitation in the contract of shipment. The Supreme Court held that inasmuch as the hogs were lost by the gross negligence of the defendant, it could not contract against such negligence.

In Ill. Cent. R. R. Co. v. Read, 37 Ill. 485, it appeared that Read was riding on a free pass which stipulated against all liability from damages from whatever cause. It appeared that Read was injured, and the jury found the defendant's servants guilty of gross negligence, and the court held that, as against such negligence, the defendant could not contract, and that such stipulation could not be available in case of gross negligence.

In Adams Express Co. v. Stettaners, 61 Ill. 184, it appears that certain goods were shipped to Chicago from New York, worth in fact $415.50, but the company gave the shipper a receipt limiting its liability to $50 in case of loss. The shipper had notice of the limitation in the receipt when he took it. The goods were lost by the negligence of the defendant. In deciding this case the Supreme Court in its opinion says: "Even if it should be conceded that the s ipper in this case must be considered as having assented to the terms of the bill of lading, we can not hold the carrier excused from the exer-

cise of reasonable and ordinary care. Courts have often had occasion to express regret that common carriers have been permitted, even by contract, to discharge themselves from the obligations imposed by the salutary rules of the common law. Practical monopolies, as they often are under the modern system of railway transportation, they seek to impose their own terms upon the public, and compel the shippers to accept such bills of lading as they may choose to issue, or not ship at all. The exemption relied upon by the defendant in the present case furnishes an illustration. It is very unreasonable in the carrier to say that it in no event will be liable beyond the sum of $50 in the absence of a special contract, though it may have received much more than that sum merely in the way of freight. If common carriers desired to deal fairly with the public it would be very easy for them to require the shipper to specify the value of the merchandise and insert the amount in the receipt, making their charges in proportion to the liability. If the shipper should falsely state the value, he could not complain at being held at his own valuation. In order to prevent the carrier from releasing himself, by contract, from all liability, courts have laid down the rule above stated—that he can not, even by contract, exempt himself from the exercise of reasonable care."

In Oppenheimer v. U. S. Express Co., 69 Ill. 62, in speaking of these receipts and contracts containing limitations upon liability of the carrier, the court says: "They are not to be read as providing against losses or injuries occasioned by their own negligence. The established legal construction is otherwise."

In Boscowitz v. Adams Ex. Co., 93 Ill. 523, the court says: "The law has wisely, and for reasons that concern public interests, inhibited a common carrier of passengers or freight from contracting against its own negligence, and notwithstanding it may be so expressed in positive terms in the release, it is not to be read as providing against losses or injuries arising from actual negligence."

These repeated decisions of the Supreme Court of this State upon the precise question involved in the case at bar

would seem to require only a citation to show that the question can not now be regarded as open in this State for further discussion. Under these authorities we have neither the right nor inclination to adopt the rule laid down in Hart's case, *supra*, but, on the contrary, the rule as held by the Supreme Court of this State meets our full approval. We hold that while common carriers can not, under the law, be permitted to fix arbitrarily the value on freight they ship at prices below its real value, without the full, free and voluntary consent of the shipper, fairly and understandingly entered into, and with the purpose of fixing its value; yet we also hold that common carriers have a lawful right to demand and require of the shipper a correct and honest statement of the actual value of his merchandise and to insert such value in the bill of lading, and then to charge the shipper a just and reasonable compensation in proportion to the risk they assume in transporting his property.

By such value, when so fixed, the shipper should be bound, in case of loss or injury to his property, although the carrier might show the property to be of less value than stated by the shipper. Such a rule would be reasonable and just to both parties. There is no hardship in the law requiring common carriers to demand a correct and truthful statement from shippers of the real value of their property; nor is there any hardship or injustice in requiring the shipper to pay a full and fair compensation to have his merchandise shipped in proportion to its value.

But it is finally insisted that this judgment must be reversed because the court refused the second instruction as asked by the defendant, but modified it by adding the proviso heretofore referred to, and in giving it as modified.

For the reasons before given, the second instruction as asked was properly refused, and for the additional reason that the proof shows that the plaintiff had no notice of any other rate of transportation or of any other mode of shipment except the one offered him by the defendant's agent.

As to whether the proviso added by the court to the instruction announced a strictly correct rule of law in using

the word "negligence" instead of the words "gross negligence," we think unnecessary to inquire, inasmuch as there was no claim made on the trial below or here that the negligence which caused the injury to the plaintiff's horse was not of the very grossest character and was so shown by the uncontradicted proof in the case.

But aside from this we understand that the Supreme Court makes no distinction between gross negligence and want of ordinary care in Oppenheimer v. U. S. Express Co., 69 Ill. 62, and Boscowitz v. Adams Ex. Co., 93 Ill. 523; and we think that, under these authorities, the proviso added to the instruction was not open to the criticism made. We are aware that in a number of cases of this character, in argument, the Supreme Court has used the term "gross negligence" instead of the single word "negligence," or "ordinary care," but we understand that under the law as now settled by numerous decisions in this State, "gross negligence" and "the want of slight care" are convertible terms and mean the same thing.

In the second instruction given for the plaintiff the jury was told that the proof must show gross negligence on the part of the defendant to entitle the plaintiff to recover. We think, therefore, even if the proviso added by the court was not strictly accurate, still it did the defendant no harm.

We have patiently and carefully considered this case, even at the risk of extending this opinion to a greater length than we intended, and are unable to find any substantial error in the record, and the judgment is affirmed.

*Judgment affirmed.*