ÆTNA LIFE INS. CO. v. SMITH.

(Circuit Court of Appeals, Eighth Circuit. June 27, 1898.)

No. 1,036.

1. LIFE INSURANCE—DELAY IN PAYING PREMIUMS—PREMIUM RECEIPTS.

On the back of a premium receipt was printed, among other things, the following: "Provided satisfactory evidence and guaranty is furnished that the person whose life was insured is in good health and acceptable for new insurance, which guaranty shall be binding upon the insured and beneficiaries under said policy, the agent will receive a premium, and the insurance will be revived by the delivery of this receipt within 60 days from the time said premium became due." *Held,* that (applying the rule that contracts written on forms prepared by the insurer will, when ambiguous, be construed most favorably to the insured) the above provision was a mere direction by the company to its agents, so that the mere acceptance of such a receipt on the payment of an overdue premium would not imply a guaranty of good health on the part of the insured.

2. SAME—VIOLATION OF RULES BY AGENTS — KNOWLEDGE OF THE COMPANY'S OFFICERS.

Where, in violation of the rules of the company, it is the practice of its agents to accept overdue premiums without requiring a guaranty that the insured is in good health, and this course of business is shown to be such that a reasonably prudent man, acting in the capacity of an executive officer, ought to have known of it, this is sufficient to warrant a finding that the executive officer of the company did in fact have knowledge of the practice.

3. SAME—AUTHORITY OF AGENTS—ACQUIESCENCE BY COMPANY.

By knowingly permitting its agents to accept for a considerable period overdue premiums without taking health certificates, the company grants them authority so to do, and cannot avoid the effect thereof by showing that its printed instructions did not authorize the practice.

In Error to the Circuit Court of the United States for the District of Minnesota.

This action was upon two life insurance policies, both dated February 16, 1893,—one for the sum of $20,000, and the other for $5,000,—insuring the life of Cassius C. Merritt, who subsequently died on April 27, 1894, at Duluth, Minn. The suit was brought by Hanson E. Smith, the defendant in error, as administrator with the will annexed of said deceased. In his complaint he alleged, among other things, that the deceased paid all the premiums that accrued on both of said policies prior to his death; that the last premiums thereon, which fell due February 16, 1894, were not paid until March 6, 1894, at which time the defendant company accepted said premiums and gave receipts therefor as provided in its policies. The defenses interposed by the defendant company were as follows:

That the premiums on said policies which became due on the 16th day of February, 1894, were not paid, and that said policies, by the terms thereof, became void and inoperative. That on March 6, 1894, one Merrill M. Clark, a friend and agent of Cassius C. Merritt, volunteered to pay to the defendant's agent at Duluth, Minn., the amount of the premiums due on the aforesaid policies on February 16, 1894. That said agent of the defendant company consented to receive the same, and to deliver receipts therefor, upon the express condition that the premiums should not be deemed paid, nor the receipts be deemed delivered, unless said Merritt was at the time in good health; that, if he was not then in good health, the said premium money should be returned and the receipts surrendered upon demand. That at the time in question, March 6, 1894, neither the defendant company nor its agent had any knowledge of the state of health of said Merritt, but that in fact, as the said Merritt and said Clark well knew, the said Merritt was not in good health, but was sick and diseased, and already suffering from the complaint of which

he subsequently died. That within a few days thereafter, and during the month of March, 1894, it came to the knowledge of the defendant's agent that said Merritt was not in good health when the aforesaid premiums were paid. That said agent thereupon demanded the return of said receipts from said Clark upon the ground that the insured at the time of the delivery thereof was not in good health, and offered to, and did in fact, return the premium money. And that said receipts were thereupon surrendered by said Clark to the defendant's agent, in pursuance of the condition upon which they had been originally delivered. The defendant company further alleged: That it was expressly stipulated in the written application for the aforesaid policies that no person other than the executive officers of the defendant company could make any agreement binding upon said company, and that in and by one of the conditions of said policies it was stipulated that no other person, save one of the executive officers of the company, could alter or waive any of the conditions of said policies, or make an agreement binding upon the defendant company. That the premium receipts referred to in the complaint, which were delivered on March 6, 1894, were in the following form:

"Hartford, Conn., February 16, 1894.

"Received the annual premium on policy No. 43,726, on the life of C. C. Merritt, continuing said policy in force for twelve months from date, ending at five o'clock p. m. on the 16 day of February, 1895. Premium, $557.40.

"Not binding without date of payment and signature of agent here.

"Paid this 6th day of February, 1894. * * *

"J. L. English, Secretary,

"St. Paul.

"G. H. MacClelland, Agent at

"Duluth, Minn."

—That upon the back of said receipt was plainly printed the following, to wit:

"Take Notice. No grace is allowed for the payment of premiums. Policies cease and determine in accordance with their provisions if the premiums are not paid on or before the date stipulated therein for such payment. Any receipt given therefor must be signed by the president or secretary of the company, and the only evidence to the assured of the authority of any agent to receive a premium is the possession of such a receipt. This receipt will not bind the company unless the date when the premium is paid is stated hereon by the the agent over his signature. Provided satisfactory evidence and guaranty is furnished that the person whose life was insured is in good health and acceptable for new insurance, which guaranty shall be binding upon the insured and beneficiaries under said policy, the agent may receive the premium, and the insurance will be revived by the delivery of this receipt within sixty days from the time when said premium became due. After the expiration of said sixty days, the delivery of this receipt on any terms will not revive the insurance, nor bind the company. All policies and agreements made by this company are signed by its president, vice president, secretary or assistant secretary. No other person can alter or waive any of the conditions of its policies, or issue permits of any kind, or make agreements binding upon the company."

It was further alleged that the foregoing provisions contained in said application, policies, and receipts were well known to Cassius C. Merritt, the deceased, and to persons connected on his behalf with the payment of said premiums, including the said Merrill M. Clark; that, as said persons well knew, the said agent had no authority to receive the premiums which were paid to him, or to surrender the receipts, without receiving the guaranty referred to on the back of said receipt, that the insured was then in good health and acceptable for new insurance; and that the said local agent of the defendant company, as the said Merritt and all persons representing him well knew, was not authorized or empowered to waive any of the conditions of said application for insurance, or of said policies of insurance, or of said receipts, or to surrender the said receipts, or to receive the said premium money, under other circumstances than therein prescribed.

For a reply to these averments of the answer the plaintiff below alleged, in substance, that it was not true, as therein stated, that said Merrill M. Clark

on March 6, 1894, volunteered to pay the overdue premiums on said policies, acting in that behalf as the friend and agent of said Merritt; that it was not true that the premiums so paid were accepted on the express condition alleged in the answer, that, if said Merritt was not then in good health, the money paid as premiums should be returned by the defendant company, and the premium receipts given therefor should be surrendered by the insured; that in truth and in fact the premiums due on February 16, 1894, were paid and accepted, and renewal receipts were given therefor, on March 6, 1894, under and subject to no conditions whatsoever, and the policies were thereby renewed for the succeeding year; that afterwards, on March 11, 1894, the agent of the defendant company at Duluth falsely represented to said Clark that the company had refused to accept the money theretofore paid as premiums on said policies, and requested a return of the renewal receipts theretofore delivered, and that said Clark having access to said receipts as security for money which he had loaned to the insured to pay the premiums, and being deceived and misled by said false statement, was thereby induced to surrender the receipts to the defendant company's agent, and to accept a check for the amount of the premiums theretofore paid, doing so wholly without the knowledge, consent, or sanction of the insured; that the statement so made to said Clark by the defendant's agent as a means of obtaining the renewal receipts was wholly false, the fact being that the defendant company had before that time accepted and treated as its own the money that was paid as premiums on March 6, 1894, and the fact being that the premium receipts which were given therefor, a copy of which is correctly set forth above in the defendant's answer, had been in the possession of the defendant's agent at Duluth, awaiting payment, for more than 30 days before they were delivered to the insured.

On these issues the case was tried before a jury, which returned a verdict in favor of the plaintiff. The case comes to this court on a writ of error which was sued out by the defendant company.

W. W. Billson (C. A. Congdon and D. A. Dickinson, on brief), for plaintiff in error.

A. A. Harris and W. O. Pealer (Henry E. Harris and Bert Fessler, on brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The principal issue in this case which was raised by the pleadings, and concerning which there was most controversy at the trial, was whether the premiums on the two policies in suit that were due on February 16, 1894, and were not paid until March 6, 1894, were paid at the latter date in pursuance of an express agreement, between the agent of the company and those who at the time were acting for the insured, that, if it transpired that the latter was not at that time in good health, the premium money so paid should be refunded to the insured, and the premium or renewal receipts given therefor surrendered to the company. The defendant contended that the premiums were paid in pursuance of such an agreement, the insured being at the time absent from home, and his physical condition being unknown to its agent, while the plaintiff below just as strenuously insisted that the money was accepted by the defendant's agent at Duluth unconditionally, and that such acceptance operated to renew the policies until February 16, 1895, long after the insured died. This issue was fairly submitted to the jury, under appropriate instructions, of which no

complaint is made; the finding was against the defendant; and it must be taken for granted by this court that there was no express agreement made on March 6, 1894, entitling the defendant company to refund the premiums on that day paid, and to demand the surrender or cancellation of its renewal receipts, if it subsequently ascertained that the insured was not in good health when the premiums were paid. Failing to obtain a favorable verdict on this issue of fact, the defendant now contends that the mere acceptance of the renewal receipts, with the notice indorsed on the back thereof, constituted a guaranty by the insured that he was then in good health, and that, if such was not the case, the policies were not renewed, and that there can be no recovery thereon. The case is likened by counsel to those in which persons accepting warehouse or express receipts, having statements indorsed thereon showing upon what conditions the property is received, or the terms upon which it will be transported, have been held bound thereby, even without an express oral assent to such terms or conditions. Watkins v. Rymill (1883) 10 Q. B. Div. 178; Duntley v. Railroad (N. H.) 20 Atl. 327; Oppenheimer v. Express Co., 69 Ill. 62, 69; Hart v. Railroad Co., 112 U. S. 342, 5 Sup. Ct. 151. It is questionable, to say the least, whether this latter defense, namely, that the insured guarantied that he was in good health on March 6, 1894, was pleaded in the defendant's answer, or intended to be pleaded. The portion of the answer which is relied upon as containing in substance such a plea would seem to have been framed for a far different purpose, namely, for the purpose of showing that the defendant's agent had no power to waive a regulation requiring him to cause policy holders whose premiums were overdue to sign health certificates, as a condition of reinstatement,—that being the usual manner in which a policy holder's state of health was made known to the company's agents,—and that the insured was advised of such want of authority on the part of its agent to dispense with the signing of a health certificate. But, waiving the defendant's failure to plead specifically that the insured guarantied that he was in good health, and that the guaranty was broken, we think that the defense which is attempted is untenable for other reasons. To establish the existence of a guaranty of good health, reliance is placed on a clause printed on the back of the renewal receipt, quoted above in the statement, which clause, when transposed so as to make its meaning more apparent, reads as follows:

"The agent may receive the premium, and the insurance will be revived by the delivery of this receipt within sixty days from the time when said premium became due: provided satisfactory evidence and guaranty is furnished that the person whose life was insured is in good health, and acceptable for new insurance, which guaranty shall be binding upon the insured and beneficiaries under said policy."

This clause on the back of the receipt does not say to the insured, as it should have done if the mere delivery and acceptance thereof were intended to bind him by a contract of guaranty, that the acceptance of the receipt by the insured should be construed as a guaranty that he was at the time in good health, and that the policy should not stand renewed unless such was the fact; but it contains, rather, a di-

rection to the agent of the company as to the mode and manner of discharging his duty. It required him, when a premium was overdue, to obtain satisfactory evidence and a guaranty that the insured was in good health and acceptable for insurance, before accepting the premium and delivering the receipt. Being, therefore, in the nature of a direction by the insurer to its agent, the law, we think, will not imply a guaranty of good health on the part of the insured from the mere acceptance of the receipt. Even if the language contained in the notice on the back of the receipts was sufficient to give some color to the claim that the mere acceptance thereof by the insured was tantamount to a guaranty of good health, yet inasmuch as the receipts in question, like the policies in suit, were written on forms which were prepared by the defendant company or its legal advisers for use in its daily business, we should esteem it our duty, the intent of the parties not being clear, to resolve any doubt against the company, and to do so in obedience to the well-established rule, that, where contracts are written on forms which are prepared by the insurer, they are to be interpreted in all cases of doubt or uncertainty in a manner which is most favorable to the insured. National Bank v. Insurance Co., 95 U. S. 673, 679; Thompson v. Insurance Co., 136 U. S. 287, 297, 10 Sup. Ct. 1019; Insurance Co. v. McConkey, 127 U. S. 661, 666, 8 Sup. Ct. 1360; Indemnity Co. v. Dorgan, 16 U. S. App. 290, 309, 7 C. C. A. 581, 58 Fed. 945; Insurance Co. v. Randolph, 24 C. C. A. 305, 78 Fed. 754, 761, 762.

On the trial in the circuit court the plaintiff below undertook to show by proper evidence that while the defendant's agents were required, by directions contained on the back of its renewal or premium receipts, to obtain from persons whose premiums were overdue "satisfactory evidence and a guaranty" that such persons were in good health, before accepting their overdue premiums, yet that, in the actual transaction of the company's business, its agents frequently accepted overdue premiums, and turned them over to the company, without requiring such a guaranty. In other words, the plaintiff undertook to prove that the company's agents in the state of Minnesota were vested with an authority, to be exercised in their discretion, to accept overdue premiums without a guaranty, and that they exercised that power, doing so in the case at bar. The evidence in support of that contention, stated briefly and in substance, consisted of proof that guaranties of good health, in the case of overdue premiums, were taken on a form prescribed by the company, termed a "health certificate," which was signed by or in behalf of the insured, and of reports of premium collections made by agents to the home office; which reports showed that, in a good many instances, premiums had been collected after maturity without exacting such health certificates. It was conceded on the oral argument, as we understand, that the proof in question was adequate to support the finding that the agents of the defendant company were clothed with the discretionary power above described, and no doubt can well be entertained on that point. It is insisted, however, that the trial court erred in its charge on this issue, in that it instructed the jury, in one part of its charge, as follows: "The plaintiff is not required to show that the

executive officers of the defendant actually knew personally of the practice of its agents in receiving renewal premiums, and delivering renewal receipts therefor, after the same were past due, without requiring evidence and guaranty that the insured persons were then in good health,"—and that it thereby permitted agents of the company to acquire an enlarged authority, different from that conferred by the company's renewal receipts, by a mere practice or course of business which was not known to the company's executive officers.    This criticism of the instruction is not tenable, we think, because the trial court immediately explained the meaning of that part of the charge which is last quoted; saying to the jury, in substance, that it meant merely this:    That the plaintiff was not required to prove by direct evidence that the executive officers had knowledge of the practice of the company's agents, and that, if the plaintiff had shown that the course of business was such that a reasonably prudent man ought to have known what the practice or course of business on the part of the company's agents was, such evidence was sufficient to warrant a finding that the executive officers did in fact have knowledge of the practice. As thus modified and explained, we think that the instruction given was substantially right.    The jury might well be left to infer that the executive officers of the company were acquainted with the practice of its agents, if, in view of the course of dealing and method of transacting business, in the exercise of a reasonable supervision over the company's affairs, they would have known it.

Complaint is further made by the defendant company that the trial court erred in excluding from the jury a pamphlet entitled "Instructions to Agents," which purported to have been compiled by it in the year 1891.    This pamphlet was attached to a deposition which was read in evidence by the defendant, and was offered, as we shall assume, for the purpose of showing that the printed instructions issued by the defendant to its agents did not permit them to accept overdue premiums without exacting a written certificate or guaranty of good health, signed by the insured.    It may be conceded that the pamphlet had a tendency to prove that such were the company's printed instructions, but there are several reasons, we think, why the exclusion of this pamphlet cannot be regarded as a material error.    In the first place, the pamphlet contained the same directions to agents, requiring them to obtain a written guaranty of good health in case of the payment of an overdue premium, that were printed on the back of the renewal receipts heretofore mentioned, which were already in evidence.    The proof therefore was merely cumulative in its character. In the second place, two witnesses testified for the defendant, and without objection, to substantially all the facts which the printed instructions tended to establish.    But a more conclusive reason why the exclusion of the pamphlet cannot be regarded as a material error is found in the fact that for the purpose of establishing that the agents of the company had power to accept overdue premiums, in their discretion, without exacting a guaranty of good health, the plaintiff relied exclusively upon proof of their actual practice in that regard, as shown by their reports to the home office, and the pamphlet had no tendency to disprove the practice in question.    The defendant

could not avoid the necessary effect of knowingly permitting its agents, for a considerable period, to accept overdue premiums without taking health certificates, by showing that its printed instructions did not authorize such a practice. Its agents could acquire the power in question by exercising it for a considerable period with the knowledge of the executive officers of the company, as well as by printed or written instructions.

There are some other alleged errors enumerated in the lengthy written argument with which we have been favored by counsel for the defendant company, but the questions of law which they present are subordinate to those heretofore discussed, and are in effect decided by what has already been said. We find no error in the record which would warrant a reversal, and the judgment below is therefore affirmed.